[No. B001943. Second Dist., Div. One. Nov. 1, 1984.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
SURETY INSURANCE COMPANY OF CALIFORNIA, Defendant and
Appellant.

**COUNSEL**

E. Alan Nunez and Mark Bernstein for Defendant and Appellant.

De Witt W. Clinton, County Counsel, and Dennis M. Gonzales, Sr., Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**HANSON (Thaxton), J.**—Plaintiff County of Los Angeles (County) sought and was awarded a summary judgment against defendant Surety Insurance Company of California (Surety) for $20,000 and interest, the amount due on a bail bond forfeiture (Pen. Code, §§ 1305, 1306). ▉ While the summary judgment is regarded as a "consent" judgment, it is now established that the judgment, a final determination of the rights of the parties, is appealable. (*People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 219 [119 Cal.Rptr. 917].)

### THE STATUTORY SCHEME

Since the issues raised here are technical in nature, relating to the procedure set forth with particularity in Penal Code sections 1305 and 1306, we first discuss those statutes, in order that the facts which gave rise to this dispute may be placed in context. These sections were recently amended by the Legislature, effective January 1, 1986; however, we discuss them as they are presently operative, and applicable to forfeiture of bail for criminal defendants.

Section 1305 provides, in subdivision (a), that "[i]f, without sufficient excuse, the defendant neglects to appear . . . the court must direct the fact to be entered upon its minutes . . . and the undertaking of bail . . . must thereupon be declared forfeited. . . ." If the amount of bail exceeds $100, the "clerk of the court shall promptly upon entering (the failure to appear) mail notice of the forfeiture to the surety . . . and shall execute a certificate of such mailing and place it in the court's file in the case." It is provided that "[i]*f the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond.*" (Italics added.)

The subdivision then sets forth the manner in which the forfeiture may be discharged by the court, "within 180 days after such entry in the minutes or, if mailing of notice of forfeiture is required, within 180 days after mailing such notice of forfeiture, . . ." Appearance by the defendant, or certain recognized legally sufficient reasons for nonappearance, may either cause the forfeiture to be discharged or toll the 180-day period. Finally, provision is made for notice to the prosecution and an opportunity for hearing prior to discharge of the forfeiture.

Section 1305, subdivision (b), gives the court the power to continue the matter when the "court has reason to believe that sufficient excuse" may exist for nonappearance.

Section 1306, subdivision (a), provides as follows: "When any bond is forfeited and the period of time specified in Section 1305 [i.e., 180 days] has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture, regardless of the amount of the bail, *shall* enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound. . . ." (Italics added.)

Subdivision (b) provides that "*If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated.*" Subdivision (e) further provides that "The right to *enforce* a summary judgment entered against a bondsman pursuant to this section *shall* expire two years after the entry of the judgment." (Italics added.)

### FACTUAL AND PROCEDURAL BACKGROUND

In the instant case, one Penny Duplessie was charged with the violation of Penal Code section 470, forgery. Defendant Surety posted bail bond No. 6-33093 for the release of Duplessie on August 3, 1982, in the amount of $20,000.

Duplessie failed to appear in court on December 8, 1982, and her bail was declared forfeited. Notice of forfeiture was mailed on December 16, 1982. One hundred eighty-one days later, June 15, 1983, was the date upon which summary judgment could first be entered; summary judgment was in fact entered on September 14, 1983, two days beyond the ninety-day period for entry, which expired September 12, 1983.

After the summary judgment was awarded below, defendant Surety sought to vacate the entry of judgment and plaintiff County opposed Surety's motion. Surety raised the issue of timeliness of the entry of the summary judgment pursuant to Penal Code section 1305, subdivision (b), pointing out that the first day summary judgment could be entered was June 15, and the last day of the 90-day period for entry was September 12, 1983. Since the judgment was not entered until September 14, 1983, Surety argued, and the entry was "jurisdictional" pursuant to section 1305, subdivision (b), the court was compelled to exonerate the bail.

The trial court denied Surety's motion on the ground that Code of Civil Procedure section 1013, which provides that when service by mail is required, "within any prescribed period or on a date certain" the period or date shall be extended 5 days "if the place of address is within the State of California," applied herein, adding 5 days to the provision for the 180-day

period set forth in the Penal Code section 1305 that preceded the 90-day period in which summary judgment could be entered. By minute order, and by adding five days, the court determined that the summary judgment had been entered in timely fashion: "As explained below, the 181st day after forfeiture was June 15, 1983. The 186th day after forfeiture was June 20, 1983. The 90th day after June 20, 1983, was September 18, 1983. Judgment was signed September 12, 1983, and was entered September 14, 1983." Defendant Surety has appealed what it terms a "result-oriented" ruling to this court.

## STANDARD OF REVIEW

■ Since statutory construction is required in this case, and, more particularly, we must consider the impact of a section of the Code of Civil Procedure (Code Civ. Proc., § 1013) on two Penal Code sections (1305, 1306), we adhere to "a cardinal rule of statutory construction, that 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citations.]" (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].) ■ However, as was explained in *People* v. *Surety Insurance Co.* (1982) 136 Cal.App.3d 556, 561 [186 Cal.Rptr. 385], "The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections 1305 and 1306 dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture."

The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond.

## DISCUSSION

It is well established in the case law that Penal Code sections 1305 and 1306 are subject to precise and strict construction. ■ As was stated in *People* v. *Surety Insurance Co.* (1973) 30 Cal.App.3d 75, 79, 80 [106 Cal.Rptr. 220], " 'where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limitations is in excess of its jurisdiction.' [Citations.]" ■ Speaking of the same 90-day "timeliness" issue raised by the same defendant corporate surety in the case at bench, the 1973 court went on to say "There can be no doubt the Legislature intended to impose a 90-day time limit in which to enter summary judgments on defaulted bail which is jurisdictional, for the statute uses the words '[or] the right to do

so expires and the bail is exonerated.' (Pen. Code, § 1306.) [¶] Where the statutory period within which an act may be performed is jurisdictional, the statute cannot be defeated by the simple device of a *nunc pro tunc* order." (See also *People* v. *Black* (1961) 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358 P.2d 915] and *People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 904 [98 Cal.Rptr. 57, 489 P.2d 1385].) The only difference between the 1973 case and the one before us is a difference in device; rather than a nunc pro tunc order, the trial court applied Code of Civil Procedure section 1013.

The Court of Appeal's analysis of the statute and its application in the 1973 case has, in our view, withstood the test of time and is in keeping with other principles of statutory construction. Courts must " ' "give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" ' " (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) The prescribed procedures and time periods set forth in sections 1305 and 1306 denote marked legislative concern for precision and timeliness, and are clear and unambiguous. Nothing in the statutory language suggests that it is directory rather than mandatory; in this connection we note that the California Supreme Court discussed this distinction in *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365]. "We have held that, generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, *unless a contrary intent is clearly expressed.* [Citations.] In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' " (Italics added.)

By its very language, as the 1973 Surety case pointed out, section 1306 *compels* exoneration of bail *if* the 90-day time limitation is not met. Here, plaintiff County missed the deadline by two days; Penal Code section 1306 is unequivocal in providing that such a miss results in discharge of the forfeiture, exoneration of bail.

Faced with this situation, the trial court applied Code of Civil Procedure section 1013, which provides for service by mail and states, in its entirety: "(a) In case of service by mail, the notice or other paper must be deposited in a post office, mailbox, sub-post office, substation, or mail chute, or other like facility regularly maintained by the United States Postal Service, in a

sealed envelope, with postage paid, addressed to the person on whom it is to be served, at his office address as last given by him on any document he has filed in the cause and served on the party making service by mail; otherwise at his place of residence. The service is complete at the time of the deposit, but *any prescribed period of notice and any right or duty to do any act or make any response within any prescribed period or on a date certain after the service of such document served by mail shall be extended five days* if the place of address is within the State of California, 10 days if the place of address is outside the State of California but within the United States, and 20 days if the place of address is outside the United States, but such extension shall not apply to extend the time for filing notice of intention to move for new trial, notice of intention to move to vacate judgment pursuant to Section 663a of this code or notice of appeal. [¶] (b) The copy of the notice or other paper served by mail pursuant to this chapter shall bear a notation of the date and place of mailing or be accompanied by an unsigned copy of the affidavit or certificate of mailing. The provisions of this subdivision are directory.'' (Italics added.)

The emphasized language above was employed by the trial court to extend the 180-day provision of Penal Code section 1305 to 185 days, thus also extending the 90-day provision of section 1306. Other efforts have been made to utilize the five-day period to expand ''prescribed periods,'' periods which abound in the law, and such efforts have been rejected on appeal. (See, e.g., *Mario Saikhon, Inc.* v. *Agricultural Labor Relations Bd.* (1983) 140 Cal.App.3d 581 [189 Cal.Rptr. 632].) We reject it here.

There is no compelling reason or expression of legislative intent which requires us to harmonize two statutes which, though part of the same general body of statutory law, relate to different subjects and have different objectives. Code of Civil Procedure section 1013 is primarily a general civil procedure section dealing with notice—notice of all kinds, necessary to the conduct of civil litigation in a manner consonant with due process. We note that the exceptions set forth in section 1013 itself, where the five-day extension is not applicable, include a notice of appeal, the timeliness of which *is* jurisdictional, beyond a doubt, and was recognized as such by the Legislature. Section 1013 was never intended to apply in extending *jurisdictional* limits, as seems quite clear from the language utilized in the section.

*Penal Code sections 1305 and 1306 do provide for notice to both the bondsmen and to the prosecution on occasion.* No notice is required, of course, at the point at which the court *must* follow the procedure set forth therein and enter the summary judgment in timely fashion or cause the bail to be exonerated. Consequently, we find that the trial court was in error in applying section 1013 of the Code of Civil Procedure to its computation of

timeliness, in order to prevent plaintiff County from suffering the consequences of the lateness of entry. We hold that section 1306, subdivision (b) *did* mandate vacation of the summary judgment and discharge of the forfeiture declared in the Duplessie matter.

Defendant Surety has also argued here that the Duplessie bond was not valid in any event, because it was not "accepted" by an appropriate agent of plaintiff in writing. In view of our decision reversing the summary judgment as entered below, we need not address this additional issue.

The judgment is reversed.

Spencer, P. J., and Dalsimer, J., concurred.